S92A0340. EVANOFF v. EVANOFF.
(418 SE2d 62)

PER CURIAM.

It appearing that the application for discretionary appeal in this case was improvidently granted, it is ordered that this appeal is hereby dismissed.

*Appeal dismissed. All the Justices concur.*

BENHAM, Justice, concurring.

Fearing that our action in vacating the grant of appellant's application for discretionary appeal will signal our approval of the conduct of counsel in the trial court, I write separately to address the issue of professionalism.

The facts are rather simple and straight-forward. The husband filed a petition for divorce on March 29, 1991, and the wife's attorney filed a notice of appearance on April 4, 1991, but did not file a timely answer.[1] The attorneys for the parties had several conversations toward negotiating a settlement of the case, and the wife's attorney sent the husband's attorney a letter confirming the anticipated negotiation and resolution of the matter without the necessity of litigation. However, notwithstanding the previous discussions between the parties' attorneys, and before May 28, 1991, the date the court had set for a final hearing, the husband's attorney proceeded ex parte before the presiding judge, and presented evidence for a final decree, which was granted on May 17, 1991. On May 21, 1991, the wife's attorney was notified of the final judgment. On June 14, 1991, the wife's attorney filed a motion to vacate which was denied. This appeal followed.

The trial court held, and I agree, that this case does not fall within the precise bounds of OCGA § 9-11-60 (d) which provides that a judgment may be set aside for "fraud, accident, or mistake, or the acts of the adverse party unmixed with the negligence or fault of the complainant." There is no question the wife's attorney, in failing to file a timely answer, could not reasonably have relied on any action by the husband's attorney. Nor did the husband's attorney take any action that could be characterized as actual fraud. Nevertheless, in light of the settlement discussions that had taken place between the par-

---

[1] There cannot, of course, be a default judgment in a divorce action. *Herring v. Herring*, 246 Ga. 462 (271 SE2d 857) (1980).

ties' lawyers, it appears the husband's attorney's action in proceeding to the final decree may have exceeded the bounds of professional and ethical conduct governing attorneys.[2]

Mainly because the actions of appellee's attorney did not violate any legal requirement, I am in agreement with the result which our action in vacating the grant of the application for discretionary appeal will bring about, namely, affirmance of the trial court's decision. Nevertheless, I have serious doubts as to whether under Rule 25 of the Rules of the Supreme Court, the establishment of a precedent is not desirable. In fact, I believe the heart of the matter in controversy on appeal concerns an issue of great importance, as to which precedent should be established; viz., professionalism and the image of the judicial system.

In recent years, on the federal and state level, courts throughout this country have sought to encourage professionalism among lawyers and alternative dispute resolution among citizens. In furtherance of the former of these goals, several years ago this court established the Chief Justice's Commission on Professionalism in an attempt to maintain in some instances and establish in others, a sense of civility and courtesy among lawyers. In drawing the distinction between professionalism and ethics, Chief Justice Clarke has often said that "ethics is that which is required and professionalism is that which is expected."

On one hand, the practice of law is dependent to a great extent on lawyers having respect for each other, honoring their promises, cooperating with others, and according each other a high degree of civility. On the other hand, lay persons sincerely believe that when a justiciable issue arises, if they so desire they will be accorded their "day in court." These expectations on the part of lawyers and lay persons are reasonable and are fully contemplated by our system of jurisprudence. Therefore, when these expectations are not fulfilled, there is understandable discontent with our system of justice. If the bar is to maintain the respect of the community, lawyers must be willing to act out of a spirit of cooperation and civility and not wholly out of a sense of blind and unbridled advocacy.

---

[2] Ethical Consideration 7-10 of the State Bar Rules and Regulations provides that:

[t]he duty of a lawyer to represent his client with zeal does not militate against his concurrent obligation to treat with consideration all persons involved in the legal process and to avoid the infliction of needless harm.

Ethical Consideration 7-38 states in material part:

A lawyer should be courteous to opposing counsel and should accede to reasonable requests . . . that do not prejudice the rights of his client. He should follow local customs of courtesy or practice, unless he gives **timely notice** to opposing counsel of his intention not to do so . . . [Emphasis supplied.]

Directory Rule 7-106 (c) (6) provides, a lawyer shall not: Engage in undignified or discourteous conduct which is degrading to a tribunal; . . .

During oral argument in the case sub judice, the question was posed by the bench as to why the final decree was taken without notice to the adverse party and prior to the scheduled hearing date. Appellee's lawyer responded by saying, in part, that the law allowed the procedure he utilized and that he had every right to avail himself of the procedure. What is disturbing to me is that many lawyers fail to realize that the law and the Code of Professional Responsibility set minimum levels of reasonable conduct. As members of an honorable profession, we must be willing to conduct our business in a manner consistent with higher standards embodied in the Ethical Considerations and aspirational goals embodied in the professionalism movement.

This court and courts throughout the country are engaged in studying, developing and implementing methods of alternative dispute resolution. Continued viability of our court system is dependent, in part, on the development and implementation of various forms of alternative dispute resolution. However, I am afraid that if we vacate the grant of the application for discretionary appeal without expressing disapproval of what took place in this case, we will encourage litigation and discourage negotiation. We must encourage those lawyers who are willing to negotiate rather than litigate because willingness to negotiate is one of the highest forms of professionalism. While I agree with the result which vacating the grant of appellant's application for discretionary appeal will bring about in this case, I feel it is necessary to be sure that the message we might send to the parties when their conduct falls miserably short of the aspirational goals of professionalism is not one of condonation.

I am authorized to state that Justice Hunt joins in this concurrence.

DECIDED JUNE 11, 1992 —
RECONSIDERATION DENIED JULY 2, 1992.

*G. Cleveland Payne III,* for appellant.
*Fletcher & McCurdy, W. Phillip McCurdy III,* for appellee.